Page number 22-5058 Thomas Massie, the Honorable, in his official and individual capacity, head out, at balance, versus Nancy Pelosi, the Honorable, in her official capacity, only head out. Mr. Weiss, for the at balance. Mr. Letter, for the at release. Morning, Your Honors, and may it please the Court. I wanted to begin my argument this morning by addressing the defendants' speech or debate community arguments, which formed the predicate of the district court's dismissal in this case. This Court's precedents direct courts to look at what is the act that is going on to determine if it's legislative, subject to immunity, or if it is not. And here I want to focus, this is not about the substance of the rule in terms of this immunity. This is about the act of enforcement. The act of enforcement that went on here was a deduction in pay. In other words, this is a claim for illegally withheld pay. Wasn't it really a fine, though? Your Honor, that's the nomenclature that they got, but let me address how that's collected. Pay is not reduced continually over time, like there's no reduction in salary. This is a fine for the non-wearing of the mask. Your Honor, there is a deduction in compensation here because of the method of enforcement. This isn't a garnishment that goes out. The 27th Amendment doesn't say reduction in compensation. That's not what it says. Your Honor, the 27th Amendment specifically says no law varying the compensation. Varying the compensation. Varying the compensation, which is an increase or a decrease. So we're not only talking about increases, and that's the substance of the 27th Amendment argument. I thought you were going to talk about speech or debate immunity. This is the merits. Right, Your Honor. So why don't you talk about the immunity question, and maybe you could start by distinguishing this case from Consumer Union and McCarthy. I would be happy to, Your Honor. Consumer Union did not deal with an out of—in fact, that case dealt with press access, as I recall. Right. Right. Your Honor, the United States Supreme Court has already addressed this compensation issue, and that's why I wanted to begin on the speech or debate issue with focusing in on what is the act that's going on here. And the act that's going on here is illegally withholding pay. That's our claim and our contention. Now, I understand we're going to proceed with the merits, and I'm going to argue that in a couple minutes, but I want to focus on the immunity issue. What is the act? What is the beef, if you will, and it's illegally withholding pay? The United States Supreme Court in Powell v. McCormick has addressed that issue, and it has said when it comes to pay—and Powell, by the way, Your Honor, is a case that was all about withholding of pay. He was initially excluded from Congress, Congressman Powell was, but by the time it came up to the United States Supreme Court, what was the beef at that point was the illegal withholding of pay. They said that's the part that's not moot, and they said when it comes to that illegal withholding of pay, and that was the claim that Congressman Powell had, there was not immunity for that. The U.S. Supreme Court has ruled when we're looking at the act, and the act here is the withholding of pay, there is no speech or debate immunity for that. There's an on-point U.S. Supreme Court case on that, and that's Powell. Isn't the withholding of pay one of the reasons, arguably, why the plaintiffs here have standing, because they have a pocketbook injury? Otherwise, I think standing might be more in doubt. Certainly, Your Honor. Of course, you know, I suppose notwithstanding the immunity analysis, anytime there's discipline imposed, there could be, you know, tangential effects. Certainly, the pocketbook harm here is why they have standing, but it's also why there's not speech or debate immunity, because the U.S. Supreme Court has addressed it in Powell. When it's a pay claim, and that's what it is, this isn't about mere fellow Congressman Rangel in the Rangel case where he's having to sit in the well of a house and, you know, have a censure read to him. We're dealing with the deprivation of pay, and the United States Supreme Court in Powell dealt with exactly that. There was rule enforcement, there were ethics things that predated that, there was all enforcement of the House rules, but why was there no speech and debate immunity? Wait, can we just, since you're talking about, let me just ask you about this. I want to get around to Powell this way. In Gravel, in Gravel, the court said it has the power to, it says, it says it has the judicial power to determine the validity of legislative actions impinging on individual rights. That was Powell, right? His right to serve in Congress. Individual rights, and Dombrowski and all these other cases involved persons with individual rights, right? Right. Two non-members and one member not yet sworn in, but that's not the case here. Your clients are members of Congress, right? But Your Honor, so was Congressman Powell. By the time that case came up, he had been excluded. They weren't adjudicated, the Supreme Court was not adjudicating necessarily the exclusion, although that was part and parcel with it. Really what they were dealing with was the legal withholding of pay. That was the issue when it came up that the United States Supreme Court in Powell. And they said no speech or debate immunity for that. We can get to the merits of it. Why? Because we're dealing with an administrative action. It's just like Kilbourn when you sent the sergeant at arms out to go and enforce a congressional order. Certainly the members of Congress that enacted that rule, they've got speech or debate immunity. Sergeant at arms does not. And that was also the holding of the U.S. Supreme Court in Powell for dealing with withholding of pay. Okay, but I take you back to the proxy voting case. We gave speech or debate immunity to the staff who administered the proxy voting rule. They had speech or debate immunity. They did, Your Honor, because that dealt with the actual voting on the hall of the House. That did not deal with administrative enforcement of rules, which puts us on point with Powell. No, this was, this was, they were, they were, the staff was implementing the rule adopted by Congress on proxy voting. They were not. How is that any different from this case? Absolutely, it's distinguishable. In that case, you are dealing with the actual processes of the function of voting. That is core speech or debate. Here you're dealing with withholding of pay. In that case, it is speech or debate immunity. In this case, it's Powell. And it's Powell because it's withholding of pay. It was the exact same injury that the U.S. Supreme Court held was not speech or debate in Powell. That's what we've got here. We've got a pay claim here. That's what this is about. What if the fine had been imposed? I mean, what if they were just sent like a fine, you know, through the mail saying, please write a check for $500? And so there was no withholding from their, you know, from their paycheck. They were just sent a fine, you know, like a parking ticket. Right. Would that make a difference? It could, Your Honor. Here there was no statutory basis to actually enforce it. It's not like there was a garnishment statute that the Speaker could go out. At least in terms of how this got implemented, one of my clients who's got a side business, Congresswoman Green, she just maxed out her withholding. She pays a dollar every month towards this fine. We'll never collect it from her because she figured out she's independently wealthy. I can tell you, Congressman Massey's wife, she is well aware of the withholding of pay because that's their primary source of income. And so, again, we're dealing with a deduction of the paycheck itself. It seems like you're putting a lot of weight on the way that the House is enforcing the fine. And I'm just wondering if, like, the enforcement was just done in some other way, then would there be speech and debate immunity? Because you're suggesting the immunity turns on the way that the fine is collected. And that seems, you know, I'm not sure that the immunity can turn on that distinction. To your honor, I don't believe if it were collected in other mechanisms, I do not believe that there would be speech or debate immunity. You'd be right back to Kilbourn. How's the Sergeant-at-Arms going out and arresting this person, right? That was the Kilbourn case. And there was speech or debate immunity in that case for the congressional actors that were passing that resolution directing the arrest, but not for the Sergeant-at-Arms that was carrying it out, that illegal Fourth Amendment. So, again, we're not... So you don't contest at all the fact of the actual enforcement of the mask wearing during this process? Because, again, to Judge Ryle's point, you're focused on the reduction of the fine. I think you have to focus on the act of the enforcement to appropriately analyze speech and debate immunity. In other words, are you making somebody stand in the middle of the house? Are you dealing with proxy voting that is core sort of speech in the house, that is core methods on how the house votes? Are you dealing with something that takes it outside of the house, which is somehow a case on pay? And it also happens to be, you know, the arrest... But, again, my question is, so should we assume that in terms of the actual enforcement of the mask wearing, you're not having any issue with that? You're just focusing on the pay issue. Your Honor, it is the enforcement is the fine, right? I mean, in terms of, hey, he's been given a notice or, hey, he's going to be censured or reprimanded, I think that's probably speech or debate. I think where it stops being speech or debate is when you go and you take something out of somebody's pay. And now we're right on the point. See, I think you're right that you focus on the act. But the act here is the resolution. And you don't look at... The courts, they ravel in our cases, so you look at the act, not the act. And here the act is the resolution, right? No, Your Honor. No? And, again, we know that that's the case because of Powell. In Powell, there was resolutions that were directing, in that case, the exclusion of Congressman Powell and the deduction of his pay. The resolutions... Say again how you explain the Press Gallery case in McCarthy. Those are access cases, Your Honor, to the hall of the House. I think that's on point more... Isn't that what this is? No, Your Honor. This is the deduction of pay. This is the deduction of pay. It's a deduction of pay for coming onto the floor of the House without a mask. That's true. It directly relates to the legislative process. Your Honor, I think it inappropriately focuses on the substance of House Resolution 38 rather than its enforcement mechanism. Okay, I hear your point. Let me ask you a different question. Suppose instead of requiring masks, the resolution had required a negative COVID test with the same fine structure. Would you be here challenging that? Your Honor, if they had had their pay legally reduced, then yes. Because, again, the question is, was there a rule enacted and the enforcement that immediately took effect to change the pay without an intervening election? So is there any way Congress could have passed a resolution that wouldn't have run afoul of a mask or a negative COVID test? Is there any way it could have done that? Your Honor, they could engage in what I would call a traditional enforcement mechanism. Which is what? They could censure, as was the case in Rangel. They could reprimand. They have the power to exclude if they can get two-thirds votes, as the Constitution requires under the Discipline Clause. There's a full panoply of enforcement mechanisms available to them. What they cannot do is vary compensation without an intervening election under the plain text of the 27th Amendment. If there was a censure, though, would that still leave in place the plaintiff's First Amendment claims? Your Honor, I think the defendants may have speech or debate immunity under Rangel if it were a mere censure. In other words, if it were not something that was going beyond actions within the House. Voting, for instance, is protected under speech or debate, and that is the McCarthy case. We know that reprimands and censures are under the precedent in Rangel. What takes this outside of it and puts it on all four with Powell happens to be the deduction in pay. Suppose we agree with Judge Child's point that this isn't a reduction of pay because it's just a deduction of a fine. In other words, the pay is still the same. Then how does that affect the speech or debate? Your Honor, that, I think, puts labels over what is actually going on here because it is a deduction in pay. What about the withdrawal? What about the withholding of income taxes? Is that a withdrawal of pay? It could be, Your Honor. The members of Congress have their pay withheld? They do. Well, why isn't that a violation of the 27th Amendment? Because, Your Honor, that law has been a record. The withholding has been a record, and there's been multiple intervening elections since that law. OK, what about what about what about what about health care? What about what about a member of Congress who, during the term of the during the term, changes their kind of health care? Your Honor, in that case, there's consent and consent obviously would, you know, be a number of things. For instance, we allow searches and seizures with consent that would otherwise not be permissible under the Fourth Amendment. So if someone's income goes up during the two years, if someone's income, total income goes up for. Your Honor, and again, you have to look at what that is. Is there a reimbursement scheme that is that is already in existence prior to the intervening election? Or is Congress voting themselves additional stipends or additional per diems, which would trigger the 27th Amendment here? No matter what label you put on. Suppose during the term of a Congress in the first year of the Congress, Congress passes a tax law which increases the tax rate that result that results in greater withholding during that term. Is that unconstitutional? You know, Your Honor, I think the tax scenario is different than the punishment scenario. For instance, specifically, and I'm looking at the Article III compensation cases that the United States Supreme Court has adjudicated. For a long period of time, there was a holding that that was a violation of the Article III compensation clause. And then obviously, in the early 2000s, the U.S. Supreme Court said, you know what? It's generally applicable to everyone. So it isn't going to govern that. I would say that the same analysis would apply here. By the way, the reason we don't, what the U.S. Supreme Court said in that case was, we're not going to allow the punishment and the deduction of judicial pay for individual acts because that's punitive, that's coercive. Those same principles are at play here as well. Can you point me to any cases in which a court has adjudicated a claim by a member of Congress, you know, against congressional leadership or other parts of Congress, where we haven't kicked the case out on standing, political question doctrines, speech or debate immunity, or what this court used to call remedial discretion? I mean, are there any cases in which a court has heard that type of dispute? Several, Your Honor. One, of course, we've been talking about a lot this morning is the Powell case itself, which was a case about pay. The other one that I would point out, and the court reached the merits and found that there was not a 27th Amendment violation, was Boehner v. Anderson. And in that case, this court did reach the substance of the claim and said, hey, there's not a 27th Amendment violation because the statute that was enacted in the COLA had been of record and enacted prior to the session. And the fact there's automatic increases, that's just a formula, but Congress had voted it. So those aren't jurisdictional issues. This court reached the merits in that case. Obviously, the U.S. Supreme Court reached the merits in Powell. But in Powell, he was no longer a congressman. Is that right? I would have to go back and look. My understanding was that he was, but even if he was not. And the basis for the court hearing it was that there was a pocketbook injury to him in his personal capacity. Correct. And that pocketbook injury is present in this case as well. Your Honor, are there any other questions? I know that I'm over. No. Thank you. Thank you. May it please the Court. I'm Douglas Sletter, the General Counsel of the United States House of Representatives. And we urge that the decision by the district court be affirmed. I'm going to just jump in on various points. In answer, I think it was to your question, Judge Rao, my friend said, well, the Boehner case. I happen to know that case very well because I was one of the attorneys. I was representing the President of the United States, who was one of the defendants. So my friend is right. There were congressional officials, officers who were defendants, but the President was. And so we couldn't argue speech or debate immunity to get rid of the case because the President was a defendant. The court, I think, has shown that it is not only read the brief, but read the DC Circuit and Supreme Court opinions. This notion that the cause that my friend relies on, that because they're suing officers of the House, it takes it out of speech or debate. That's been just absolutely, completely rejected. The Supreme Court rejected it in Gravel and Eastland. This court most recently rejected it in McCarthy. The recent cases are all ones that I've argued before this court or the district court. The exact same argument was raised. It was a wow. I also didn't see him focusing much on Gravel. And there's kind of that two-step process about it being an integral, deliberative, communicative process that we're talking about. Again, the mass policy, they don't seem to dispute that. But then you also have the issue about, is this within the jurisdiction of the House? You seem to have skipped over to just, this is a fine being implemented to the mass policy. I'm a little hard of hearing. I apologize. I don't think he focused on Gravel at all, is my point. So I guess what I'm asking you is, don't we have to go through that analysis? Your Honor, the Gravel analysis is what Judge Walton did. Gravel sets a two-part test, and therefore that's why Judge Walton felt that he needed to examine whether there actually, this was a reduction in compensation. We're fine that he did that, but we don't think it was necessary. And for example, the opinion I called to your attention, the recent district decision by Judge Cowley in Clyde, says that the speech or debate clause is not, immunity is not limited by other parts of the Constitution. So you don't need to reach that issue. But, as I say, Judge Walton did. We think the absolute, and it's citing Gravel, that there are two points. And so, as I say, we think it was unnecessary, but looking at it as alternative ways of reaching the same result, we're fine. But I think that particularly the McCarthy decision by this court shows that the key question, as this court has understood what the Supreme Court is saying, is you look to see, is this integral to the legislative process? When I asked plaintiff's counsel about McCarthy, his answer was that the difference is that there, the staff who had speech or debate immunity were involved in the exact, in the legislative, they were involved in enforcing the proxy rule, that is, the voting in Congress. Whereas here, what they're doing, and I'm just repeating what he says, there's nothing to do with the voting in Congress. It's the deduction of pay. And that's the distinction he makes. What's the matter with that? The matter with that, Your Honor, is the reduction in pay is obviously part of the scheme that the Congress, that the House set up here was the limitations on access to the House chamber and the enforcement mechanism. Well, he said they weren't excluded from the House. They were just fine. That's his whole point. In fact, I think he said, you know, Congress did have the authority. There would have been speech or debate immunity if what Congress had done is expelled them from Congress. Right. I believe, I did take, I think he did make that concession to you, which I found very interesting. But, Your Honor, let's look at McCarthy. McCarthy was a remote voting scheme. The way that scheme is implemented is by the staff. The speaker doesn't and her. But the staff was, I assume the act was, the staff was registering a remote vote, right? And I think it's more than registering. They set up the whole system and make it work. But his point is that has to do with the voting, whereas this case is about the deduction of pay. I get your point that, well, the deducting of the pay is the way you enforce the resolution. But his point is that it's fundamentally different because the deduction of pay has nothing to do with the vote. In other words, the congressman, the plaintiffs in this case could vote. That wasn't what was being interfered with here. They were deducting their pay. So let's look at Consumers Union, which Your Honor first asked about. And I don't think I ever heard an answer there to your question. Consumers Union was a staffer who was then charged with determining and enforcing how journalists, who and how journalists could come into the House chamber. Yeah, access to the chamber. Right. It's part of the legislative process. Well, the fine system here is the way of enforcing the access to the chamber. So to me, these are very similar and quite analogous. If I could also, I think Judge Rao asked, is the focus on the pay in Powell v. McCormick. The key thing, the reason that the Supreme Court addressed that is that, as you just said before, about standing and mootness. And so the court said, well, we do have a continuing controversy because Mr. Powell at that point still had a back pay claim. And then the court, the whole analysis of what was going on there was back the pay that was then deprived because he was excluded rather than expelled. And the court, the main part of the court's discussion was that he had to, if they were going to do this, he had to be expelled rather than excluded. And so I think that it is really having a tail wagging the dog by making it seem like what Powell was about was the back pay. That's why there was still continuing jurisdiction. But that's not what the case was about. How do you distinguish Powell's feature debate analysis from this case? How do you distinguish Powell from this case? Setting aside the standing question, the Supreme Court did hear his claim. Because in Powell, what the court there focused on was the actions of the officers of the House who were carrying out the function, who kept Mr. Powell from being able to come on the floor and vote, etc. Since Powell, more recently in Eastland and Gravel, the Supreme Court, without discussing what happened in Powell, made absolutely clear that the feature debate protection applies as well to the actions of the non-member officers and officials of the court. And that is exactly what then this court applied in McCarthy and Consumers Union. So what we now know is from those more recent Supreme Court opinions is you can't say, well, this is different because we're talking about the administration of what Congress did. Because that exact argument is rejected at least twice by the Supreme Court and by this court most recently. Mr. Lutter, just a framing question. Do you think that the speech or debate immunity is a jurisdictional bar to this court's consideration? This court has used that exact word, Your Honor. So this court says it is jurisdictional. It's not clear whether in other courts of appeals or in other circuits. I'm not sure whether any of them have said it, but this court specifically has. Now, Your Honor knows maybe better than I do, there's jurisdiction and there's jurisdiction. So what exactly does that mean? Maybe you're aware of just the other day, Judge Nichols decided a case. He said it was jurisdictional, following some decisions of our court. And we agree it is jurisdictional. In that case, we said the House did not raise speech or debate. It wanted to get to the merits of the dispute. And we said that the House has the ability to do that. Judge Nichols said you can only do that maybe through a clear, clearly expressed waiver. And even then, he said maybe there is no waiver, because in the Holstowski case, I think it is the Supreme Court, raised questions about whether there can or can't be a waiver of speech or debate. Well, if it goes to our subject matter jurisdiction, it can't be waived. It can't? It cannot be waived. It cannot be correct? If it goes to our subject matter jurisdiction. Right. And so Judge Nichols held that, and he therefore dismissed Mr. Meadows' case. And so at least his view, which obviously is not binding on this court, is that it cannot be that the House has to assert speech or debate if it wants it to be part of the case. And the argument he made was it's like the Fifth Amendment. It's something that it's not self-executing. It has to be asserted by the parties. But it's the House's position that it's not. It doesn't go to subject matter jurisdiction. Again, it's very hard for me to know exactly what this court means when it says it's a subject matter jurisdiction determination. In our view, there clearly has to be situations where if the House does not invoke speech or debate, the case is properly before the court, unless there are other reasons that it's not. Again, Judge Nichols took a different position. Now, here, I know you started out and you said something I figured out sitting here so many times. Obviously, it's not opposed in this specific case. Interesting question. Right. But we'll see. Mr. Meadows sought reconsideration before Judge Nichols, and maybe he's going to appeal. I don't know. So we might get to this court, and we might learn from this court exactly what this means about that it's jurisdictional. And I just want to be clear as to whether or not you believe the mask and the fine issue can be separated, or are they integral to each other because the fine is the enforcement of the mask policy? For speech or debate purposes, Your Honor, we think they are integral because this is all, from our perspective, this is all part of the same scheme because the question is, we've got the policy about masks. Now, how is it going to be effectively enforced? If it can't be effectively enforced, it raises a question about the practicality or the purpose of the mask requirement. And the House decided that the best way to enforce it was through the fine system. And I might add, pages 43 and 44 of our brief, we explain that the system of fines for members who violate House rules is well established in the House. And, by the way, the House operates very much on a precedent and history system. And so there are various cases where there are fines because this is one of the ways that the House can effectively carry out its rules about decorum and discipline, etc. So it's a well-established power that the House uses. Indeed, I have to say, I think it would be a remarkable ruling by this court about really affecting the separation of powers if this court were going to start interfering with the House's ability to fine its own members as discipline. Remember, we're not talking about fining anybody else. We're talking about fining its own members. And this court, in various cases, first versus Black and Brown and Williamson, etc., has made clear that this court believes, and we think correctly, that it has very limited function in affecting the way that the House operates. Thank you very much, Your Honors. Mr. Weiss, we'll give you two minutes. Thank you, Your Honors. A couple of points in rebuttal. First, I have never heard a limiting principle from my colleague about their view of speech or debate immunity. I suppose, in their view, if we wanted to go back to flogging, there would be no— Well, before you get into that, that's not especially helpful. Could you respond to two of his points? Number one, that if you look at Gravel and our cases, Consumer Union and McCarthy, that there is no distinction any longer between the actor and the act. That's what those three cases stand for. And, you know, it's the Supreme Court and our case law, and they clearly do say that. And that, therefore, you know, the distinction that Powell rested on there just is no longer something we can do. What about that? Yeah, let me address that, Your Honor. Right. Yeah. First of all— Then I have a second question. Right. Gravel dealt with a committee process. That is a core function of what the House is doing. Just like, by the way, McCarthy did. Just like, by the way, Consumer's Union did. Access to the whole of the House. When we look at Powell—and, by the way, I want to correct the record. I did reread Powell. He initially got his pay reduced in the 90th Congress. He was re-seated in the 91st Congress. He was a sitting member of Congress when that pay was reduced. So this distinction about, well, it may be different depending on whether he's a member of Congress. He was a member of Congress when that pay was reduced. It was a different session. As it may be in a couple months, it's going to be a new session of Congress. But, again, we're dealing with something that's outside that court legislative function, not— Well, but what about Mr. Letters' point that he said it's not? He said this goes to the heart of how Congress disciplines its members, which the Constitution gives directly to Congress, and that there are many rules that Congress adopts that are enforced just this way. And let me just finish my question, and that if this court were to question that, it would raise serious separation of powers concerns. Your Honor, that simply is not true. Well, I thought you might say, but why? Right. It's not true for several reasons. First of all, it was not true in terms of the reduction and the withholding of pay in the Powell case. Secondly, they have numerous means that they have traditionally used, whether it's the private people of committee chairmanships, which, in fact, they did in one of my clients, whether it is— Well, was Mr. Letter wrong that this procedure of deducting pay has been part of the way in which Congress enforces its rules for decades? Is that wrong? When it has happened historically, Your Honor, it has been very rare. And all of that occurred prior. And again, the 27th Amendment was initially part of the original Bill of Rights, and obviously it sat on the shelf for a long period of time prior to its adoption by the states. But ultimately, the rules changed under the 27th Amendment in the mid-'90s, and there's been very, very few cases that have addressed that issue. This is really a case of first impression in terms of what are the limits on Congress and what they can do. Can they line people up and shoot them outside? Obviously, the 8th Amendment would not allow them to do that. It would probably be a de facto expulsion as well. He would suggest, Your Honors, that there's no limit to that, the speech or debate. It's enforcement of their rules. We can strip them to the lace and flop them like we did back in the 1800s. It's enforcement of their rules, speech or debate immunity. There is no limit in principle that limits at all his view of speech or debate immunity. And yet we know courts protect— But we are talking about fines that have been established over time. Like, that's been their precedent as a way of enforcement. Your Honor, it has occurred very, very rarely. And when it has happened, it has happened generally other than no one has challenged it after the adoption of the 27th Amendment. And so I don't think you can look to historical practice when you've got an amendment that changes—that's the very point of an amendment. And the point of an amendment is to change the status quo. For decades, for instance, we did not allow certain categories of persons to vote. And yet we amended our Constitution to change the status quo. The 27th Amendment changed the status quo in much the same way. We cannot— Do you need to get us beyond speech and debate clause before we would even need to reach 27th Amendment? I can, Your Honor. And obviously we think Powell is dispositive of that question. The other cases that they cite deal with functions within the hall of the House themselves, not bearing pay, not administrative officers bearing pay, which is Powell. Again, he was a sitting member of Congress. So all of these distinctions that they try to draw, when it comes to pay, that's 27th Amendment. And this distinction that he said, well, the president was a party in Boehner. Well, then why didn't you dismiss the legislative defendants and the legislative actors in Boehner that were implemented? They would ostensibly be subject to it. And the reason that that was not the case I would submit to you was because Powell precluded that argument. But you see, you're getting us—you're getting into the merits of the case as part of the speech or debate analysis. And the whole purpose of speech or debate immunity is to keep the courts out of them. Your Honor. So it doesn't—it shouldn't make any difference for purposes of speech or debate what the 27th Amendment says. The question is, can the defendants here be held accountable in court for what the defendants say is a legislative act? And we can't—we can't resolve that by—we're not allowed to resolve that by looking at the merits of your 27th Amendment case. Your Honor, I would submit— Isn't that right? Well, the speech or debate jurisprudence always looks at the act. And that's what I've been focusing on. What is the act that's at issue here? Yeah, you look at the act, but not the legality or constitutionality of the act. You look at the act and the defendant's position here is that the act is an integral part of the resolution. Your Honor, if that were true, and that position were true—and that was the same position, by the way, that these same defendants articulated and appelled that the United States Supreme Court rejected. If that were true— Well, what do you do with Grovel? Your Honor, Grovel was a committee issue. It's just like McCarthy. You're dealing with the internal function of the Consumer's Union. You're dealing with access to the House and the internal functioning of it versus an outside administrative function in pay. That's the distinction. And, again, if there were not a United States Supreme Court case right on point, I would say that it might have a stronger argument. But here there is. And they have failed utterly to distinguish the holding in power. We're dealing with employee actors who are enforcing a pay decrease, and that was the issue ultimately in power as respects to a setting member of Congress. So I did want to just very, very briefly— Just to clarify, the plaintiffs here are bringing this to both their individual and official capacity. They are, Your Honor. And the individual for the pay that they're due, the official, because if the pay is diminished, we start to deal with congressional independence. And so that's the official capacity issue. I wanted to finish on this in terms of this distinction of it's not a pay decrease, it's a fine. If you go back, Your Honors, and you look at the U.S. Supreme Court's discussion in U.S. v. Hatter, that was the 2001 Article III judicial pay case, they said it's not a problem that the taxes are uniform. It becomes an issue of independence. And if you go into the Sleeper article that we cited, which this Court has also cited in some of its jurisprudence, it talks about the development of the 27th Amendment. It's all about the independence of members of Congress individually to be able to articulate and have sustenance. That's why, in part, we have the Ascertainment Clause. That's also why they did the 27th Amendment, to ensure independence. That was the same guiding principles that drove the Article III Compensation Clause. What the U.S. Supreme Court said in Hatter on Article III is, hey, look, it's okay if it's a uniform tax because that's not directed at anybody. But we're going to have a real problem if you start to find judges who don't like the rulings. That's a violation of the Article III Compensation Clause. I would finish with suggesting to this Court that the same is true when it comes to a violation of the 27th Amendment. We start to get into, and this is right out of Madison, I wanted to finish this, in Hamilton, in the Federalist. If you control a man's pocketbook, you control his will. That's what this is about. The 27th Amendment takes this form of enforcement off the table. Thank you, Your Honors. Thank you. Case is submitted.
judges: Rao, Childs, Tatel